UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVIAN LEJBMAN individually and on behalf of all others similarly situated,, <br><br> Plaintiff, <br><br> v. <br><br> TRANSNATIONAL FOODS, INC., a Florida corporation, et al., <br><br> Defendants. | Case No.: 17-CV-1317-CAB-MDD <br><br> **ORDER ON MOTIONS TO DISMISS** <br> **[Doc. Nos. 22, 23]** |

This matter comes before the Court on Defendant Transnational Foods Inc.'s ("Transnational") and Defendant Conservas Cerqueira, S.A.'s ("Cerqueira") motions to dismiss. [Doc. Nos. 22, 23.] The motions have been fully briefed and the Court finds them suitable for determination on the papers and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendants' motions to dismiss [Doc. No. 22, 23] are granted in part and denied in part.

## I. PROCEDURAL BACKGROUND

On June 27, 2017, Plaintiff filed a consumer protection class action complaint against Transnational and Cerqueira, seeking damages and equitable relief for the alleged false representations and omissions regarding Defendants' marketing, advertising, labeling, packaging, distributing and selling of the Pampa Octopus products. [Doc. No. 1, ¶¶ 1-6.] The complaint alleges violations of California's False Advertising Law ("FAL") Business & Professions Code § 17500, *et seq.;* the Unfair Competition Law, Business & Professions Code § 17200, *et seq.* ("UCL"); California's Consumers Legal Remedies Act,

California Civil Code § 1750, *et seq.* ("CLRA"); negligent misrepresentation; and intentional misrepresentation.

On December 1, 2017, Plaintiff filed the First Amended Complaint ("FAC"). [Doc. No. 20.] The FAC asserts FAL, UCL, CLRA, negligent misrepresentation and intentional misrepresentation claims against Defendants for misrepresenting and misleading consumers regarding three the Pampa Octopus Products (the "Product").[1] [Doc. No. 20 at ¶ 1.] The FAC alleges that "the Product is not [o]ctopus, but is actually [s]quid (also known as Calamari). Squid is a lower quality form of seafood that is cheaper than [o]ctopus." [*Id.*] Further, Plaintiff contents that relying on the labeling, and believing she was buying octopus, Plaintiff purchased a tin of "Pampa Octopus" at a Wal-Mart store in San Diego County, California in 2016. [*Id.* at ¶¶ 57-59.] "Subsequent to purchasing the Product Plaintiff discovered that the Product is not [o]ctopus, which is what Plaintiff intended to purchase." [*Id.* at ¶ 59.] Had the Product not claimed to be octopus, Plaintiff alleges that she would have not purchased it, or alternatively, had she known it was squid, she would not have purchased it at the premium price. [*Id.* at ¶ 60.]

Further, the FAC contends that Defendants, when faced with the increased cost of octopus, replaced the octopus in the Products with a cheaper substitute, squid, and conspired and worked together in misrepresenting the Product as octopus. [*Id.* at ¶¶ 5, 26-53.] In order to perpetuate the alleged fraud, Plaintiff asserts that the word "Octopus or Pulpo" is prominently displayed on the label of the Product to induce and mislead customers into buying a Product purporting to be octopus. [*Id.* at ¶ 31-34.] Plaintiff alleges that Cerqueria has processed, packaged, imported, supplied, distributed, represented and sold the squid in the Pampa Octopus products when "as the supplier, packager, and importer of the [s]quid, Cerqueria knows or should know that it is not [o]ctopus." [*Id.* at ¶¶

---

[1] The Pampa Octopus products at issue are the following three flavor varieties: (1) Pampa Octopus in Garlic Sauce; (2) Pampa Giant Spiced Octopus in Marinara Sauce; and (3) Pampa Fancy Octopus in Vegetable Oil.

3, 17.] As to Transnational, the FAC complains that Transnational has represented, advertised, marketed, labeled, distributed, and sold squid as being octopus in its Pampa Octopus products when "as the distributor of the [s]quid, Transnational knows or show know that it is not [o]ctopus." [*Id*. at ¶¶ 3, 16.]

Plaintiff seeks to represent a nationwide class consisting of "all person in the United States who have purchased the Product for personal use and not for resale, from the period of four-years prior to the date of filing this Complaint, up to an including the date that Notice has been provided to the Class." [*Id*. at ¶ 81.] In the alternative, Plaintiff seeks to represent "all persons in the State of California" who have purchased the product. [*Id*. at ¶ 82.] The FAC's Prayer for Relief includes, among others things, an award of equitable relief "enjoining Defendants from making any octopus claims for the Product," restitution, disgorgement and an award of actual and punitive damages. [*Id*. at 42-43.[2]]

On December 15, 2017, Defendants each moved to dismiss Plaintiff's FAC. [Doc. Nos. 22, 23.] Cerqueira moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). [Doc. No. 22.] Transnational also moves to dismiss pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1) and 12(b)(6). [Doc. No. 23.] Plaintiff filed an opposition to the motions [Doc. No. 27] and Defendants filed their replies [Doc. Nos. 28, 29].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss based on the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Plaintiff has the burden of establishing that the court has subject matter jurisdiction over an action. *Assoc. of Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000). In a class action at least one of the named plaintiffs must meet the Article III standing requirements. *Bates v. United Parcel Servs., Inc.,* 511 F.3d 974, 985 (9th Cir. 2007). Article III requires that: "(1) at least

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

one named plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citation omitted).

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson,* 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

Defendants move to dismiss Plaintiff's injunctive relief claims and multi-state class claims pursuant to Federal Rule of Civil Procedure 12(b)(1). In addition, Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's UCL, FAL, CLRA, negligent misrepresentation, and intentional misrepresentation claims. Defendants also seek dismissal of the conspiracy and aiding and abetting theories on the grounds that they have not been pled with the requisite specificity. The Court will address each of Defendants' arguments in turn.

### A. Plaintiff has Adequately Alleged the UCL, FAL, CLRA and Misrepresentation Claims

Both Defendants contend that Plaintiff has failed to plead sufficient facts to support her claims, or with the requisite specificity, required by Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). Defendant Cerqueira also argues that Plaintiff's UCL, FAL, CLRA and misrepresentation claims should be dismissed because there is no vicarious liability under the UCL, FAL and CLRA.

In order to protect its citizens from unfair, deceptive or fraudulent business practices California has enacted a number of consumer protection statutes. The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any customer." Cal. Civ. Code § 1770(a). Similarly, the UCL prohibits any "unlawful, unfair or fraudulent business act or practice," and the FAL prohibits any "unfair, deceptive, untrue or misleading advertising."[3] CAL. BUS. & PROF. CODE §§ 17200, 17500.

The claims of negligent and intentional misrepresentation contain common elements. To successfully allege a negligent misrepresentation claim requires a plaintiff

---

[3] Any violation of the FAL necessarily violated the UCL. *Williams v. Gerber Products Co.,* 552 F.3d 934, 938 (9th Cir. 2008).

allege: (1) a misrepresentation of a past or existing material fact; (2) made without reasonable grounds for believing it to be true; (3) made with the intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Ragland v. U.S. Bank Nat'l Ass'n,* 209 Cal. App. 4th 182, 196 (2012). Intentional misrepresentation requires "a knowingly false representation or fraudulent omission by the defendant; (2) and intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. June 22, 2015).

Because Plaintiff's claims are all grounded in fraud, the FAC must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) which provides: "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1110 (9th Cir. 2017) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). These heightened pleading requirements apply equally to any claims based on UCL, FAL and CLRA claims which ground in fraud. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009).

Here, Plaintiff has set forth the factual allegations that the Product she purchased is not octopus. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"). Her theory of fraud is that Defendants, when faced with the increased cost of octopus, replaced the octopus in the Products with a cheaper substitute, squid, imported the product into the United States, and then marketed and sold the Product as octopus. [Doc. No. 20 at ¶¶ 5, 26-30.] In order to perpetuate the alleged fraud, the word "Octopus or Pulpo" is prominently displayed on the label of the Product to induce and mislead customers into buying a Product purporting to be octopus. [*Id*. at ¶ 31-34.] Relying on the misrepresentations on the label, and believing she was buying octopus, Plaintiff purchased the Product at a Wal-Mart store in San Diego County,

California in 2016. [*Id*. at ¶ 57-59.] For purposes of a motion to dismiss, the Court accepts as true the factual allegations of the FAC that the Product is not octopus and is in fact made with squid. The allegations of the FAC are sufficient to provide enough details concerning the "who, what, when, where and how" of the alleged fraud sufficient to satisfy Rule 9(b)'s specificity requirements. *See Kearns*, 567 F.3d at 1124. Accordingly, the Court finds that the FAC adequately alleges that the Product is not what it purports to be. *See Deutsch v. Flannery,* 823 F.2d 1361 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement of [Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.") (internal quotations marks omitted).

Although framed in different terms, each Defendant challenges the sufficiency of the allegations regarding their roles in the alleged misrepresentations, but both arguments are unavailing. Defendant Cerqueira argues for dismissal on the grounds that vicarious liability has no application under these actions and that Plaintiff has not adequately alleged its knowledge of the misrepresentation nor its intent to aid in the conspiracy. [Doc. No. 22-1 at 11-13, 14-17.] While Defendant Cerqueira is correct that under the UCL and FAL a defendant's liability must be based on its personal participation in the unlawful practices and unbridled control over the practices alleged to violate the statutes, the FAC adequately alleges Cerqueira's participation in the unlawful practices. *See, e.g., Emery v. Visa Int'l Serv. Ass'n,* 95 Cal. App. 4th 952, 960 (2002) (under the UCL and FAL a defendant's liability "must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate sections 17200 or 17500"). Similarly, Defendant Transnational's assertion that there are insufficient facts establishing its knowledge of Cerqueira's alleged activities or the misrepresentation on the label of the Products, is belied by the allegations of the FAC. [Doc. No. 23-1 at 11-12.]

The FAC contains numerous paragraphs outlining how the Defendants allegedly acted in concert to perpetuate the scheme to misrepresent that the Product is octopus. [Doc. No. 20 at ¶¶ 36-57.] Further, the FAC alleges Cerqueira, as a seafood supplier and cannery,

supplied Transnational with the Product and that Transnational, with the assistance of Cerqueira, sold the squid passed off as octopus to consumers. [*Id.* at ¶¶ 19, 20.] Additionally, the FAC asserts that (1) Cerqueira canned and packaged the squid despite it being imported as octopus; (2) Transnational purchased the Product from Cerqueira knowing it was squid and then sold the product to consumers under its brand; (3) Cerqueira's "packager code is imprinted on the Product's packaging;" (4) Cerqueira had control over the nature and content of the label; (5) Transnational's and Cerqueira's advertisements, labeling, packaging and marketing campaigns related to the Product were false because the Product is not octopus and both Defendants dissemination these false representations; and (6) the Defendants "knew of should have known that the [o]ctopus Product was actually squid." [*Id.* at ¶¶ 16, 38, 39, 42, 102-05, 121-126, 132-34, 146-47, 162, 183, 190, 210-14, 234-35, 258-59, 269-70, 279.] For pleading purposes, Plaintiff has adequately alleged that each Defendant had knowledge that the Products contained squid while representing that it was octopus. The role each Defendant actually played in the alleged scheme are questions of fact not appropriate for decision at the motion to dismiss stage. *See e.g., Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal. App. 4th 115, 134-35 (2007).

For the reasons set forth above, Plaintiff has adequately pled her UCL, FAL, CLRA and misrepresentation claims. Accordingly, the motions to dismiss are denied as to these claims.

**B. Plaintiff's Claims on Behalf of the Proposed Nationwide Class are Dismissed with Leave to Amend**

Second, Defendants contend that Plaintiff lacks standing to assert claims on behalf of a nationwide class. [Doc. No. 22-1 at 17-18; Doc. No. 23-1 at 13-15.] Defendants argue that California's UCL, FAL and CLRA cannot be applied extra-territorially because Plaintiff has not demonstrated the conduct suffered by the class was connected to California. For the same reasons it argues for dismissal of the statutory claims,

Transnational also argues for dismissal of the negligent misrepresentation claim on behalf of the nationwide class. [Doc. No. 23-1 at 15-17.]

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 58, 589 (9th Cir. 2012) (internal quotation marks and citation omitted) (finding that a proposed nationwide class should not be certified as to the plaintiffs' UCL, FAL and CLRA claims, due to the fact that differences in state consumer protection laws precluded a finding of commonality pursuant to Federal Rule Civil Procedure 23). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate the foreign law, rather than California law, should apply to class claims." *Id.* at 590. California law may only be used on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* "With regard to the UCL, FAL, and CLRA, non-California residents' claims are not supported where none of the alleged misconduct or injuries occurred in California." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013) (dismissing claims brought on behalf of non-California residents where defendant was located in Texas and California named plaintiff did not allege "any activity within California except their own purchase" of the products).[4]

---

[4] *See also, Oxina v. Lands' End, Inc.,* No. 12-cv-2577-MMS (NLS), 2015 WL 4272058, at *10 (S.D. Cal. June 18, 2015) (dismissing plaintiff's claims regarding the nationwide class because plaintiff did "not allege that the misconduct suffered by the nationwide class occurred inside California, or that defendant's headquarters or principal place of operations are inside California."); *Zora Analytics, LLC v. Sakhamuri*, No. 3:13–CV–639–JM WMC, 2013 WL 4806510, at *9 (S.D. Cal. Sept. 9, 2013) (concluding that without facts demonstrating defendant's actions occurred or were substantially related to acts occurring in California, no UCL claim can be asserted); *Castagnola v. Hewlett–Packard Co.*, No. C 11–05772 JSW, 2012 WL 2159385, at *4 (N.D. Cal. June 13, 2012) ("A non-California resident may bring claims under the UCL and the CLRA, if they can allege misconduct that occurs within or emanates from California."); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) ("In determining whether the UCL and CLRA apply to non-California residents courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made.").

Here, Plaintiff has failed to establish that the claims of the nationwide class are sufficiently related to California to trigger application of the government interest test and its resulting determination whether California law should be applied on a class-wide basis. All that is alleged is that Plaintiff is located in California and that she purchased the Product in 2016 "from a Wal-Mart, located in San Diego County, California." The claims are being brought against Cerqueira, a company located in Spain, and Transnational, a company located in Florida with its principal place of business in Miami. Additionally, the FAC contains the general allegation that Transnational sells its products throughout the United States. But, noticeably absent from the pleading is any evidence that the out-of-state purchases were directed from California or had anything to do with California, such that California law might apply to those claims. Without more, Plaintiff has not met her initial burden of demonstrating that California has significant contact or significant aggregation of contacts to the claims of each class member.

Accordingly, the motions to dismiss the claims brought on behalf of a nationwide class are granted. Plaintiff may renew her nationwide class claims if she can amend to demonstrate the requisite nexus.

### C. Plaintiff has Standing to Seek Prospective Injunctive Relief

Finally, Defendants move to dismiss Plaintiff's claims for injunctive relief under Federal Rule of Civil Procedure 12(b)(1). Defendants' contend that Plaintiff lacks standing to seek prospective injunctive relief because she has not demonstrated a likelihood that she will suffer repeated injury by Defendants alleged conduct. [Doc. No. 22-1 at 18-19; Doc. No. 23-1 at 17-19.]

In order to have standing to seek prospective relief a plaintiff must "demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates,* 511 F.3d at 985 (internal quotation marks and citation omitted). The likelihood of repetition of the wrong requirement is met by plaintiff establishing a "real and immediate threat of repeated injury." *Id.*; *see also Ervine v. Desert View Reg'l. Med. Ctr. Holdings, LLC.*, 753 F.3d 862,

868 (9th Cir. 2014) (Article III standing to seek injunctive relief is determined by the "imminent prospect of future injury.") (citations omitted). But, while past wrongs alone are insufficient to grant standing, they are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of L.A. v. Lyons,* 461 U.S. 95, 102 (1983) (internal quotation marks omitted). In cases where standing is premised entirely on the threat of repeated injury, a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111.

When considering requests for injunctive relief in cases grounded in California's consumer protection statutes, district courts within this circuit have split on whether injunctive relief is available to a consumer who learns after purchasing a product that the product's label was false and what allegations would suffice to establish a likelihood of future harm. The Ninth Circuit, aware of the growing divide, elected to resolve the issue in *Davidson v. Kimberly Clark,* 873 F.3d 1103 (2017). In *Davidson,* the court held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual or imminent, not conjectural or hypothetical threat of future harm." *Davidson,* 873 F.3d at 1115 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Further, the court provided color as to what types of allegations it considered sufficient to successfully allege the threat of actual or imminent future harm. Specifically, the court elucidated that such harm "may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so she will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly assume the product was improved." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff specifically alleges that she "would like to, and intends to, continue purchasing the Product in the future," but she can no longer rely on the truth and accuracy

of Defendants' products and that she, and other consumers "are prevented from making a meaningful and informed choice about seafood they are purchasing, and are otherwise at continued risk of real and immediate threat of repeated injury, including purchasing deceptively labeled and packaged Products sold at inflated prices above their true market value….Defendants' labels cannot be trusted and she continues to be deceived." [Doc. No. 20 at ¶ 78.] Presuming the truth of Plaintiff's allegations, construing the allegations in her favor, and in light of the Ninth Circuit's holding in *Davidson*, the Court concludes Plaintiff has adequately alleged an actual or imminent risk of future harm. Therefore, Plaintiff has standing to seek injunctive relief. Accordingly, the motions to dismiss the claims for injunctive relief under the UCL, FAL and CLRA are denied.

## IV. CONCLUSION

For the reasons explained above, Defendants' motions are **GRANTED IN PART AND DENIED IN PART**. [Doc. Nos. 22, 23] The Court orders as follows:

1. Defendants' motions to dismiss the UCL, FAL, CLRA, and misrepresentation claims are **DENIED**;

2. Defendants' motion to dismiss the claims for injunctive relief are **DENIED**;

3. Plaintiff's claims brought on behalf of a nationwide class are **DISMISSED WITHOUT PREJUDICE**. Plaintiff has up to an including **April 2, 2018**, to file an amended complaint addressing the standing issues identified related to the claims being brought on behalf of the nationwide class. If Plaintiff intends to file an amended complaint that re-asserts these claim, Plaintiff shall file a notice with the Court stating that intention on or before **March 19, 2018**. If Plaintiff does not file a notice with the Court by March 19, 2018, Defendants shall file their answers to the FAC within the limits established by the Federal Rules of Civil Procedure; and

4. Because the Court has dismissed the nationwide class claims for lack of standing, Plaintiff cannot rely on the damages attributable to those non-California class claims to satisfy CAFA's $5,000,000 amount in controversy requirement. In

light of this, the Court is concerned that it lacks jurisdiction to entertain Plaintiff's CAFA claim. Accordingly, if Plaintiff does not amend she is **ORDERED TO SHOW CAUSE** in writing, on or before **March 19, 2018**, as to why this action should not be dismissed for lack of subject matter jurisdiction. Plaintiff must provide the Court with evidence that $5,000,000 is in controversy based on the remaining California class claims. Defendants are permitted, but not obligated to respond in writing on or before **March 26, 2018,** with authority and evidence that they believe may assist the Court in determining whether subject matter jurisdiction exists.

**IT IS SO ORDERED**.

Dated: March 12, 2018

Hon. Cathy Ann Bencivengo
United States District Judge